UNITED STATES of America, Plaintiff,

v.

**Adebayo Oladapo OGUNBOLA
and Charles Oliver Olu,
Defendants.**

**CR No. 95–362–FR.**

United States District Court,
D. Oregon.

Jan. 4, 1996.

Kristine Olson, United States Attorney, Allan M. Garten, Assistant United States Attorney, Portland, Oregon, for Plaintiff.

Andrew Bates, Portland, Oregon, for Defendant Adebayo Oladapo Ogunbola.

Steven T. Wax, Federal Defender, Portland, Oregon, for Defendant Charles Oliver Olu.

## OPINION

FRYE, Judge:

The matters before the court are 1) the motion of the defendant, Adebayo Oladapo Ogunbola, to suppress (# 11); and 2) the motion of the defendant, Charles Oliver Olu, to suppress evidence and statements (# 13).

## BACKGROUND

On September 13, 1995, a federal grand jury returned an indictment against the defendants, Adebayo Oladapo Ogunbola and Charles Oliver Olu, charging:

On or about the 29th day of August, 1995, in the District of Oregon, defendants ADEBAYO OLADAPO OGUNBOLA and CHARLES OLIVER OLU, knowingly and with the intent to defraud, and knowingly aiding and abetting each other, did use and attempt to use counterfeit access devices in or affecting interstate commerce; that is, counterfeit MasterCard and VISA cards and credit card account numbers which did not belong to defendants.

All in violation of Title 18, United States Code, Sections 2, 1029(a)(1), and 1029(b)(1).

## FINDINGS OF FACT

On August 29, 1995 at approximately 1:20 p.m., Sergeant Randall Schleining, an officer with the West Linn Police Department, was on duty in his patrol car and had stopped at the intersection of Walnut Street and Sunset Avenue in West Linn, Oregon. Officer Schleining observed a red Buick Regal automobile driven by defendant Olu, a black man, with a passenger, defendant Ogunbola, also a black man, proceeding toward him on Sunset Avenue.

Officer Schleining observed that the vehicle driven by defendant Olu was traveling at a speed of approximately 45–50 miles per hour in a zone posted for 25 miles per hour. Officer Schleining followed the Buick Regal as the driver made several turns in what appeared to Officer Schleining to be an effort "to lose" his patrol car.

Officer Schleining intended to cite the driver of the Buick Regal for speeding, but before he was in a position to activate his overhead lights, the driver of the Buick Regal stopped the vehicle at a convenience store located in West Linn, Oregon. The passenger, defendant Ogunbola, got out of the vehicle and went into the store. The driver, defendant Olu, remained in the vehicle.

Officer Schleining pulled his vehicle close to the Buick Regal and walked over to defendant Olu. He asked to see his driver's license. Defendant Olu stated that he did not have a driver's license because he had left it in the State of California; that he did not have any identification; and that he lived in the State of New York, but he did not know his address. Officer Schleining asked defendant Olu for his name, and defendant Olu answered that it was Kenneth Born. Defendant Olu explained that he was from Great Britain, and that he did not have a passport with him. Officer Schleining asked who owned the car, and defendant Olu answered that it was a rental car. Officer Schleining asked to see the rental agreement. Defendant Olu reached over and opened the glove box, but immediately closed the glove box indicating that the passenger, defendant Ogunbola, had the rental agreement. Before the glove box had been closed, Officer Schleining observed bundles of cash in the glove box.

The passenger, defendant Ogunbola, returned to the vehicle with two soft drinks and sat down in the passenger's seat. He did not close the car door. Defendant Ogunbola appeared to Officer Schleining to be extremely nervous and fidgety. Officer Schleining observed that even though it was

a warm day, defendant Ogunbola was wearing a jacket which he frequently adjusted and readjusted as he sat in the car.

Officer Schleining asked the driver, defendant Olu, if he would get the rental agreement from defendant Ogunbola now that he had returned to the vehicle. Defendant Ogunbola opened the glove box and removed the rental agreement from under the bundles of cash. On the basis of the conduct of both of the defendants and the presence of a large amount of cash, Officer Schleining became suspicious that the money might be related to some kind of illegal narcotics transaction. Officer Schleining called the police station for assistance. Officer McClintock responded to the call for assistance.

Officer Schleining reviewed the rental agreement and determined that the Buick Regal had been rented to one Kenneth Born under what appeared to be a New York driver's license. Officer Schleining asked a police dispatcher to check the number of the driver's license with the records of the Department of Motor Vehicles of the State of New York. Officer Schleining was informed that this driver's license was not valid in the State of New York.

After Officer McClintock arrived, Officer Schleining again asked defendant Olu, the driver of the vehicle, if he had any identification. Defendant Olu handed him a wallet which had nothing in it. Officer Schleining placed defendant Olu under arrest, pursuant to O.R.S. 807.570, for failing to carry a driver's license. Officer Schleining advised defendant Olu of his *Miranda* rights and asked him if he understood them. Defendant Olu stated that he understood his rights, and then told Officer Schleining that his true name was Charles Oliver Olu. Defendant Olu indicated that he was in the Portland area for a job interview, but that he did not know the name of the company to which he was applying for the job; that he did not know anything about the cash in the glove box; and that he did not know his passenger's name since he had only met him a few days earlier. Officer Schleining placed defendant Olu in a patrol car.

Officer Schleining then told defendant Ogunbola that although he had not placed him under arrest, the questions he intended to ask him could relate to criminal activity. He then advised defendant Ogunbola of his *Miranda* rights and asked him if he understood those rights. Defendant Ogunbola indicated that he understood his *Miranda* rights and then volunteered that the money in the glove box belonged to him. Defendant Ogunbola stated that he had closed a bank account in the State of Georgia on August 21, 1995 and had received $19,000 from that account. He stated that he had approximately $10,000 of the money left. Defendant Ogunbola stated in response to Officer Schleining's questions that he had no receipts, identification, or anything with his name on it. Defendant Ogunbola stated that his name was Adebayo Ogunbola, and that he was a citizen of Great Britain. He said that he had known defendant Olu for about one year having met him in England.

Officer Schleining asked defendant Olu if he could search the car. Defendant Olu gave him permission to search the car.

Prior to obtaining defendant Olu's consent to search the vehicle, Officer Schleining had called the police station and requested the use of a dog that was trained to detect the odor of illegal drugs. A dog from the West Linn Police Department was brought to the scene. Based upon the permission that defendant Olu had given to search the car, the dog was allowed to "sniff" the car. The dog vigorously scratched at the trunk area of the car and at the bottom of the glove box which still contained the cash. The dog had demonstrated the same behavior many times over the past four years when she located the odor of narcotics. Officer Schleining believed at that point that defendants Ogunbola and Olu were trafficking in narcotics.

Based upon the statements made by defendant Ogunbola, the lack of any identification, the nervous demeanor of defendant Ogunbola, his fidgeting with his coat, the cash in the glove box which defendant Ogunbola had claimed, and the response of the trained narcotics dog to odors in the car, Officer Schleining conducted a "pat down" of defendant Ogunbola. Officer Schleining believed at the point that he conducted the "pat down" that

he had probable cause to believe that defendant Ogunbola was involved in some form of narcotics trafficking, and that he had a reasonable belief that his personal safety was in jeopardy. As part of the "pat down," Officer Schleining discovered a hard object under defendant Ogunbola's waistband. It was a pager. He also discovered a hard object in defendant Ogunbola's left front pocket. It was a leather-sewn, talisman-type object. As Officer Schleining patted down toward defendant Ogunbola's ankle, he felt another hard object in defendant Ogunbola's stocking. He also saw a glint of silver through the stocking material. He thought this could be a knife. Officer McClintock also believed that the object in defendant Ogunbola's stocking was a knife.

Hidden in defendant Ogunbola's stocking were two credit cards and a Georgia driver's license with defendant Ogunbola's picture on it. The driver's license was in the name of Geoffrey A. Roades. Officer Schleining handed the credit cards back to defendant Ogunbola and asked Officer McClintock to check the driver's license with the motor vehicle information available from the State of Georgia. Officer McClintock was unable to locate the driver's license in the computer. Officer Schleining then asked defendant Ogunbola where he had obtained the driver's license. Defendant Ogunbola stated that he had paid someone for it. Officer Schleining then asked to see the credit cards again in an attempt to establish defendant Ogunbola's identity. Upon closer scrutiny, the credit cards appeared to have been forged due to the poor printing and the blurry holograms.

Based upon all of this evidence, Officer Schleining placed defendant Ogunbola under arrest for criminal possession of a forged instrument, pursuant to O.R.S. 165.022.

After defendants Ogunbola and Olu were arrested, Sergeant Grove from the West Linn Police Department searched the car. In the passenger area, Sergeant Grove found yellow pages which had been torn from a telephone book. The pages contained a listing of Portland area banks. Officer Schleining retrieved six bundles of cash totaling $20,850 from the glove box.

Defendants Ogunbola and Olu were taken to the West Linn Police Station. Sergeant Grove removed the wallet of defendant Ogunbola and found a slip of paper with an 800 telephone number and five individual credit card numbers. West Linn Detective Lancaster called the 800 telephone number and determined that certain of the account numbers listed had been subject to large cash withdrawals on that day or the previous day. The cash advances on the five credit card numbers totaled $20,800. Detective Lancaster then called the United States Secret Service for assistance. Special Agents Cline and Peters responded to Detective Lancaster's call for assistance.

Special Agents Cline and Peters advised defendants Ogunbola and Olu of their *Miranda* rights. They were then interviewed. Defendant Olu indicated that he did not want to talk. Special Agent Peters searched defendant Olu and found $363.86.

After defendant Olu left the holding cell, Detective Garrett went into the room to make sure that nothing had been left behind. Detective Garrett found a small yellow envelope which contained three counterfeit credit cards under the cross-section of the table in the holding cell. The credit cards were in the name of Kenneth Born.

Defendant Ogunbola was also interviewed by Special Agents Cline and Peters. After once again being properly advised of his *Miranda* rights and after having waived those rights, defendant Ogunbola stated that he had bought the credit cards and the Georgia driver's license for $1,000 from an individual in Atlanta, Georgia. Later, defendant Ogunbola indicated that he had bought the credit cards and the Georgia driver's license for $1,000 from an individual in Los Angeles, California. Defendant Ogunbola stated that he and defendant Olu had flown to Portland, Oregon on August 29, 1995 from Los Angeles, California, and that they had driven to at least ten Portland area banks to obtain cash advances from the use of the credit cards found on his person by Officer Schleining.

## CONTENTIONS OF THE DEFENDANTS

The defendants contend that the initial stop of their vehicle was not based upon a

reasonable suspicion or probable cause to believe a crime had been committed. The defendants contend that Officer Schleining did not have any legal basis for initiating any action against them, and that the acts of the police officers were a pretext for racial discrimination. The defendants contend that the police officers illegally used a minor traffic infraction as a pretext for a search of their vehicle. The defendants further contend that the scope of the police activity exceeded what was permissible upon a traffic stop.

Defendant Olu contends that under the totality of the circumstances, his consent to search the vehicle was not freely given, and that even if the court finds that his consent was freely given, the consent was the fruit of a prior unlawful arrest.

The defendants further contest the admissibility of the statements they made to the police officers under the Fifth Amendment and the standards set out in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Finally, regardless of the legality of the initial stop of the vehicle and the legality of the subsequent arrest of defendant Olu, defendant Ogunbola contends that the initial questioning of him and his subsequent pat down and frisk which lead to the discovery of the counterfeit credit cards was not based upon any reasonable suspicion or probable cause.

## CONTENTIONS OF THE GOVERNMENT

The government contends that the police officers did not cause defendant Olu to stop the Buick Regal. The government contends that defendant Olu voluntarily parked the vehicle at a convenience store; that defendant Olu was lawfully arrested for failing to carry a valid driver's license; and that defendant Olu freely and voluntarily consented to a search of the vehicle. The government contends that Officer Schleining had probable cause to believe that a crime had been committed, and therefore he had probable cause to believe that defendant Ogunbola was dangerous.

## APPLICABLE LAW

■ If a police officer has a reasonable suspicion to believe that an individual is engaged in some criminal activity, the officer may conduct an investigatory stop. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A pat down search can be initiated where there is a founded suspicion that the subject is armed and dangerous. *United States v. Corona*, 661 F.2d 805, 807–08 (9th Cir.1981).

■ A consent given to search is valid so long as the consent was freely and voluntarily given. Whether the consent given to search was freely and voluntarily given "is a question of fact to be determined by the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973).

■ The factors that a court considers in determining whether the consent to search was voluntary may include, but are not limited to 1) whether the defendant was in custody; 2) whether the arresting officers had their guns drawn; 3) whether *Miranda* warnings were given prior to the search; 4) whether the defendant was told he had the right to withhold consent; and 5) whether the officers claimed that they could obtain a search warrant. *United States v. Kim*, 25 F.3d 1426, 1432 (9th Cir.1994).

## ANALYSIS

■ Officer Schleining was a credible witness. Officer Schleining saw the driver of the Buick Regal traveling 40–45 miles per hour in a zone posted for 25 miles per hour. Officer Schleining had a lawful reason to approach the vehicle parked at the convenience store and to inquire as to the license of the driver.

■ Defendant Olu had no driver's license and no identification. He gave inconsistent stories to Officer Schleining. When defendant Olu opened the glove box, there were bundles of cash in plain view. The actions of Officer Schleining in placing defendant Olu in custody were reasonable and in accordance with the law. Defendant Olu freely and voluntarily consented to the

search of the vehicle after he was placed in custody. There is no evidence in this record of any threats or coercion. Defendant Olu was properly advised of his constitutional rights; he waived those rights.

The questioning of the passenger, defendant Ogunbola, and the pat down search of defendant Ogunbola were supported by independent facts and reasonable suspicions. Officer Schleining had reason to believe that defendant Ogunbola was dangerous based upon his acts and statements, the presence of bundles of cash in the glove box, and the reaction of the trained narcotics dog. The pat down search of defendant Ogunbola was reasonable, and the action taken by the police officers was lawful. During the pat down search, Officer Schleining reasonably removed hard objects from defendant Ogunbola's stocking and inspected them. Once the driver's license shown by defendant Ogunbola was determined to be invalid, Officer Schleining asked to reinspect the credit cards. Defendant Ogunbola voluntarily returned the credit cards to the police officers. In summary, there is no evidence that the police officers threatened or coerced either defendant, and defendant Ogunbola was properly advised of his constitutional rights prior to making any statements.

## CONCLUSION

Officer Schleining had a lawful reason to approach the vehicle driven by defendant Olu and to inquire as to his driver's license. The police officers did not act outside the scope of their authorized police activity. All statements and evidence at issue are admissible.

The motion of defendant Ogunbola to suppress (# 11) is denied, and the motion of defendant Olu to suppress evidence and statements (# 13) is denied.